UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| **KENYON DEVON AMES,** )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>**ENTERPRISE RAC COMPANY** )<br>**OF MARYLAND, LLC** )<br>)<br>*Defendant.* )<br>) | Case No. 8:26-cv-00762-LKG |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Enterprise RAC Company of Maryland, LLC ("Enterprise") submits this Memorandum in Support of its Motion to Dismiss the wrongful discharge claim asserted against it in the most recent Complaint filed by Plaintiff Kenyon Devon Ames. As shown below, Plaintiff has failed to sufficiently plead facts to make such a claim plausible.

### I. BACKGROUND

Solely for purposes of this Motion under Rule 12(b)(6), the following facts from the Complaint are taken as true.

A. Plaintiff was employed by Enterprise from December 2022 to January 17, 2025 in various capacities, most recently as a driver. ECF 1-1 (Compl. ¶¶ 8-9).

B. In June 2024, Plaintiff raised several subjective questions about the safety of the Enterprise trucks, including that the Enterprise trucks lacked a sticker identifying the height of the vehicle, the trucks were operating with active engine warning indicators, and that generally there were assignments involving unspecified DOT safety violations. *Id.* ¶ 11.

C.	After Enterprise completed its investigation on June 19, 2024, Plaintiff was informed his concerns were unfounded, as "Enterprise found no safety violations and no basis for discipline." *Id.* ¶¶ 14-16.  Plaintiff "was not reprimanded, warned, or counseled at any time for any negative incidents" and "continued performing his duties without issue through late 2024." *Id.*

D.	Plaintiff also purportedly raised his concerns with the federal Occupational Safety and Health Administration, the Maryland Occupational Safety and Health Administration and the Virginia State Police. *Id.* ¶ 12.

E.	At the end of 2024, Plaintiff rented a vehicle from Enterprise.  *Id.* ¶ 19.  On December 30, 2024, an Enterprise Management Trainee, Lindsay Ross, contacted Plaintiff regarding Plaintiff's rental.  *Id.*  During that discussion, Plaintiff, by his own admission, used profanity.  *Id.*

F.	On January 17, 2025, Plaintiff's employment was terminated for "improper employee conduct", in part because of Plaintiff's use of profanity with Ms. Ross and other additional unprofessional behavior.  *Id.* ¶¶ 23-24.

G.	Plaintiff's termination occurred more than seven months after he raised his unfounded safety concerns.  *Id.* ¶¶ 11, 23.

## II. PROCEDURAL HISTORY

The following summarizes the procedural history of Plaintiff's claims against Enterprise:

1.	In April 2025, Plaintiff filed a complaint against Enterprise in Montgomery County Circuit Court asserting claims of retaliation under the Occupational Safety and Health Act, 29 U.S.C. § 660 (c) (the "OSH Act"), and discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and the Maryland Fair Employment Practices Act.

2. On May 16, 2025, Enterprise timely removed the case to the U.S. District Court for the District of Maryland on the grounds of federal question jurisdiction and diversity jurisdiction. *See Ames v Enterprise RAC Company of Maryland, LLC*, 8:25-cv-0158-DLB ("*Ames I*").

3. On May 23, 2025, Enterprise filed a Motion to Dismiss the claims in *Ames I*. *See Ames I*, ECF 10, ECF 10-1.

4. On June 5, 2025, Plaintiff filed his Opposition to the Motion to Dismiss, in which Plaintiff conceded that he had not filed a Charge of Discrimination required to support his Title VII claim. However, Plaintiff raised, for the first time, a claim for wrongful discharge in violation of public policy. *Ames I*, ECF 13 at 3, 6-7.

5. On November 24, 2025, the Hon. Deborah L. Boardman granted the Motion to Dismiss and dismissed the Complaint in *Ames I*. Specifically, the Court dismissed the OSH Act and Section 1981 claims with prejudice and all remaining claims without prejudice. *Ames I*, ECF 18, ECF 19.

6. In response to Plaintiff's arguments concerning wrongful discharge, the Court first found that such a claim had not been clearly stated in the Complaint, but nevertheless explained:

> But even construing his complaint liberally to assert a wrongful discharge claim, the Court finds that Ames fails to allege sufficient facts to survive Enterprise's motion to dismiss. Under Maryland law, "[a]n employee who asserts that [they were] wrongfully discharged must 'specifically identify the clear mandate of Maryland public policy that was violated by [their] termination.'" *Terry v. Legato Sys., Inc.*, 241 F. Supp. 2d 566, 569 (D. Md. 2003) (quoting *Szaller v. Am. Nat'l Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002)). This policy mandate must derive from "a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation." *Szaller*, 293 F.3d at 151 (quoting *Porterfield v. Mascari II, Inc.*, 788 A.2d 242, 245 (Md. Ct. Spec. App. 2002), *aff'd*, 823 A.2d 590 (Md. 2003)). Nowhere in his complaint does Ames

3

> identify a clear Maryland public policy that Enterprise violated by terminating him.

*Ames I*, ECF 18 at 14.

7.  Rather than appeal or attempt to file an amended complaint within *Ames I*, Plaintiff filed this case – again in Montgomery County Circuit Court – which Enterprise also has timely removed on grounds of diversity jurisdiction. Enterprise now once again moves to dismiss Plaintiff's wrongful discharge claim and with prejudice.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a Plaintiff must allege enough facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). A court should dismiss a complaint for failure to state a claim if the Plaintiff has not set out "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Plausibility requires more than the "sheer possibility that a Defendant has acted unlawfully" and "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). Pleadings that are "no more than conclusions are not entitled to the assumption of truth." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Accordingly, legal arguments and legal conclusions contained in a complaint should receive no weight from a court considering a Fed. R. Civ. P. 12(b)(6) challenge. *Twombly*, 550 U.S. at 555.

Plaintiff's *pro se* status neither excuses him of his obligation to state a plausible claim nor transforms the court into his advocate. *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016). And, as shown below, this plausibility requirement has been regularly applied to dismiss claims for wrongful discharge as insufficiently pled. *See, e.g., Lucas v. Moore*

4

*Transport of Tulsa LLC*, 2018 WL 4052194 (D. Md. 2018) ("This Court simply cannot stretch the allegations in Mr. Lucas' *pro se* Complaint to make out a plausible claim to relief under the wrongful discharge exception to at-will employment.").

### III. ARGUMENT

In the Complaint, Plaintiff asserts a single count: "Wrongful Termination in Violation of Maryland Public Policy." ECF 1-1, ¶¶ 29-33. However, Plaintiff fails to state a cause of action for wrongful discharge, which has been repeatedly recognized as a "narrow cause of action." *Gross V. Havlik Corp.*, 2025 WL 2653198 at *3 (D. Md. 2025)(granting motion to dismiss wrongful discharge claim). To establish wrongful discharge, "the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Coleman v. Target Corp.*, 2025 WL 3268686, at *6 (D. Md. 2025) (quoting *Wholey v. Sears Roebuck & Co.*, 370 Md. 38, 803 A.2d 482, 488 (2002)). Here, Plaintiff: (i) fails to identify a clear mandate of Maryland public policy that was violated; and (ii) fails to state facts to allow a plausible nexus between his conduct involving the supposed public policy and his termination.

**A.    Plaintiff Fails to Identify a Clear Mandate of Maryland Public Policy.**

Courts in this District regularly dismiss wrongful discharge public policy claims at the Rule 12(b)(6) stage when the facts alleged in the complaint fail to identify a clear mandate of public policy. *See e.g., Siatkowski v. Johns Hopkins University*, 2025 WL 2257624 at *3 (D. Md. 2025) (granting motion to dismiss where "Plaintiff has not otherwise identified any clear mandate of public policy entitling him to pursue relief"); *Elliott v Maryland Correctional Training Center*, 2021 WL 2155035 (D. Md. 2021) at *4 (dismissing wrongful discharge claim on 12(b)(6) motion where the plaintiff "has failed to plausibly allege a violation of a clear mandate of public policy"

and holding "[i]t is not enough to allege in general terms that the state of Maryland has public policies in favor of public safety or against fraud; pleading with particularity is required.); *Simmons v UM Capital Region Health, Inc.*, 2021 WL 4806336 at*5 (D. Md. 2021) (granting motion to dismiss upon finding: "the Complaint fails to identify any unremedied mandate of public policy that has been violated").

As Judge Boardman previously explained to Plaintiff in *Ames I*, an employee who asserts that they were wrongfully discharged must "specifically identify the clear mandate of Maryland public policy that was violated by [their] termination." *Ames I*, ECF 18 at 14 (quoting *Terry v. Legato Sys., Inc.*, 241 F. Supp. 2d 566, 569 (D. Md. 2003)). *See also Szaller v. American National Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002); *Cooper v Baltimore Gas and Electric Co.*, 2024 WL 3849526 (D. Md. 2024). "This policy mandate must derive from 'a preexisting, unambiguous, and particularized pronouncement, by constitution, enactment, or prior judicial decision, directing, prohibiting, or protecting the conduct in question so as to make the public policy on the relevant topic not a matter of conjecture or interpretation.'" *Id.* (quoting *Szaller*, 293 F.3d at 151).

In his Complaint, Plaintiff asserts that the basis for his claim is "the well-established Maryland public policy protecting employees who report dangers that threaten public safety…." ECF 1-1 (Compl. ¶¶ 3, 30). In doing so, Plaintiff completely fails to cite to any public policy that is "reasonably discernible from prescribed constitutional or statutory mandates." *Wholey*, 370 Md. at 53-54, 803 A.2d at 490-91. Specifically, in the Complaint, Plaintiff alleges that in June 2024, he reported three vehicle safety concerns:

      a. Lack of visible vehicle height information;
      b. Trucks operated with active engine warning indicators;
      c. Assignments involving potential DOT safety violations.

ECF 1-1 (Compl., ¶ 11).  However, he fails to cite to a single statutory, regulatory, or constitutional provision that any of these concerns manifest anything more than his own personal perspective rather than arising out of a legislative or judicial pronouncement that reflects the public policy of the State of Maryland.  In fact, not only has Plaintiff failed to identify any statutory or constitutional provision in support of his claim, but, in *Ames I*,[1] Plaintiff alleged that Enterprise conducted an investigation of his concerns and "concluded the concerns were unfounded" and further that "[u]nsatisfied with the Company's response, Plaintiff reported the [vehicle sticker] issue to OSHA, Maryland Occupational Safety and Health (MOSH), and the Virginia State Police.  These agencies also dismissed the concerns…." *Ames I*, ECF 1-1 ¶ 9.  In other words, not only his employer, but also several governmental agencies informed him that there was no basis for his alleged public safety concerns.

In asserting his public policy wrongful discharge claim, Plaintiff cites in the Complaint to four cases, none of which support Plaintiff's claim of a purported clear public policy.

First, Plaintiff cites *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981).  However, that case has nothing to do with concerns about public safety.  Rather, the plaintiff in that case raised concerns about accounting practices, falsification of sales and income information, and purported bribes.  *Id.* at 33.  The court in *Adler* ultimately determined that the plaintiff there failed to establish that the alleged acts violated any clear mandate of public policy.  *Id.* at 46.

---

[1] This court may take notice of allegations that Plaintiff made in a related case (*Ames I*) involving the same parties and the same facts and occurrences.  "It is appropriate for the court to take judicial notice of its own records in another case if the prior case is brought into the pleadings in the case on trial or where the two cases represent related litigation." *Infrastructure and Energy Alternatives, Inc. v. Axum Fringe Solutions Group, LLC,* 2025 WL 3677007 at n.7 (D. Md. 2025) (internal quotation marks deleted) (quoting *Cason v. Holder*, 815 F. Supp. 2d 918, 922 n.8 (D. Md. 2011) (quoting *Thurman v. Robinson*, 51 F.3d 268, 1995 WL 133350, at *2 (4th Cir. 1995) (table decision)).

Second, Plaintiff cites *Wholey v. Sears*, 370 Md. 38, 803 A.2d 482 (2002). That case again is not on point. Of relevance to the case at bar, in *Wholey* the plaintiff reported suspicious criminal activity to a supervisor, and the court held that there was *no* clear mandate of public policy against terminating an individual for reporting suspected crimes to a supervisor. *Id.* at 63. Although the court, in *dicta*, stated there could be a clear mandate of public policy for terminating an individual who gives testimony at an official proceeding or reports a suspected crime to law enforcement (*id.* at 61), there is no holding in that case extending the limited policy identified to concerns about public safety. Indeed, the court made the exception so narrow that the plaintiff there did not even fall within it. *Id.* at 63.

Third, Plaintiff cites *Porterfield v. Mascari*, 374 Md. 402, 823 A.2d 590 (2003), which again does not support Plaintiff's assertion of a clear public policy. There, the plaintiff alleged she was fired because she asked to speak to legal counsel prior to signing a written warning for poor performance. *Id.* at 407. The court held that "while Maryland law may favor access to counsel, there is no sufficiently clear mandate of public policy that has been violated on the facts alleged here such that vindication by bringing a wrongful discharge action is required to protect the public interest." *Id.* at 434.

Finally, Plaintiff cites *Szaller v. Red Cross*, 293 F.3d 148 (4th Cir. 2002). Like the cases above, *Szaller* is not on point. There, plaintiff alleged that he was terminated because he reported to an internal hotline that the employer was violating Food and Drug Administration regulations and a consent decree. *Id.* at 150. The court held there was no violation of Maryland public policy because Maryland courts "have given no indication that federal regulations or consent decrees constitute Maryland public policy." *Id.* at 151.

Tellingly, all four decisions on which Plaintiff relies ultimately concluded that the plaintiff

in each of those cases did not allege facts sufficient to support a wrongful discharge cause of action. Moreover, none of them considered the question here, which is whether purportedly terminating someone for raising personal subjective public safety concerns that do not arise out of any statutory or constitutional pronouncement is a violation of a clear policy mandate under Maryland law. As Plaintiff has not cited a statute or case on point supporting his position, there is not a clear mandate of Maryland public policy and he has failed to establish an indispensable predicate to his claim.

B. **There is No Nexus Between Plaintiff's Public Safety Concerns and His Termination.**

Even if Plaintiff had properly identified a clear mandate of Maryland public policy, dismissal would still be proper because there is no nexus between the concerns he raised and his termination.

Here, there is no support for Plaintiff's assertion that his personal subjective report of vehicle safety concerns in June 2024 caused (or even was a factor) in his discharge. Plaintiff's employment was terminated more than seven months after Plaintiff's reported complaint. *See* ECF 1-1 (Compl. ¶ 11). In retaliatory discharge cases, the law is well-established that the "temporal nexus" between the alleged protected activity and the termination "must be 'very close' to establish causation." *Marshall v Univ. of Maryland Med. Ctr.*, 2020 WL 5106788 at *(D. Md. 2020) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that two months and two weeks separating the time between the protected activity and the plaintiff's termination was "sufficiently long so as to weaken significantly the inference of causation between the two events"). Here, there was indisputably seven months between his expression of concern about the safety of the vehicles and Plaintiff's termination.

Moreover, the Complaint itself delineates the intervening events that led to his separation – namely, his use of profanity in speaking with a coworker who was following up with him on a

9

personal rental of an Enterprise vehicle. There is simply no causal connection between Plaintiff's reporting vehicle safety concerns and his termination. For this reason also, Plaintiff's wrongful discharge claim fails.

C.     **Plaintiff's Claims Should Be Dismissed With Prejudice.**

The Court should deny Plaintiff the opportunity of any further amendment and instead dismiss his claims with prejudice. In *Ames I,* Plaintiff was apprised by the Court of the deficiencies in his wrongful discharge claim. *See Ames I*, ECF 18 at 14. Despite this, Plaintiff, in filing the instant case as a new matter in the Montgomery County Circuit Court, still failed to identify a plausible public policy basis for his wrongful discharge claim, and further failed to assert any facts that would allow the Court to plausibly conclude that his expression of concerns in June 2024 were causally connected to his termination in January 2025.

The Fourth Circuit has held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir. 1986).

Courts in this District have frequently denied a plaintiff the opportunity to amend their complaint on the grounds of futility where the plaintiff has already had more than one opportunity to plead their claim and have failed to do so plausibly. For example, in *Elliott v. Maryland Correctional Training Ctr.*, 2022 WL 814294 (D. Md. 2022), the court dismissed the plaintiff's claim alleging wrongful discharge based upon a purported public policy against endangering public safety, and also concluded that the plaintiff's "request to amend his complaint a third time to cure any deficiency will be denied as futile, because the claims fails as a matter of law." *Id.* at \*6. *See also Menk v. Mitre Corp.*, 2024 WL 2257894 at 3-4 (D. Md. 2024) (denying plaintiff's motion to amend multiple counts, including count for wrongful discharge).

10

Here, as noted, Plaintiff has been afforded two opportunities to plead a plausible claim for wrongful discharge and has failed to do so on both occasions.  As the Fourth Circuit noted in affirming a District Court's decision not to allow the plaintiff a third bite at the apple in pleading his claim, "[Plaintiff] already failed to resolve pleading defects after the district court provided an opportunity to do so."  *Brainchild Surgical Devices LLC v. CPA Global Limited*, 144 F.4th 238 at n. 14 (4th Cir. 2025).

The same result should be reached here.  In *Ames I*, the Court provided Plaintiff with guidance and a roadmap as to how he might amend his wrongful discharge claim to make it plausible, and he unquestionably has failed to do so.  Any further attempt to amend the claim would therefore be futile, and Enterprise respectfully requests that the Court grant its Motion to Dismiss with prejudice.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Enterprise respectfully requests that the Court dismiss Plaintiff's case in its entirety and with prejudice.

Date: February 24, 2026                    Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　 */s/ Edward Lee Isler*
　　　　　　　　　　　　　　　　　　　　　　　Edward Lee Isler, Md. Fed. Bar No. 22332
　　　　　　　　　　　　　　　　　　　　　　　Micah E. Ticatch, Md. Fed. Bar No. 21208
　　　　　　　　　　　　　　　　　　　　　　　John W. H. Harding, *Md. Fed. Bar Admission Pending*
　　　　　　　　　　　　　　　　　　　　　　　ISLER DARE, P.C.
　　　　　　　　　　　　　　　　　　　　　　　1945 Old Gallows Road, Suite 650
　　　　　　　　　　　　　　　　　　　　　　　Vienna, Virginia 22182
　　　　　　　　　　　　　　　　　　　　　　　(703) 748-2690 (main)
　　　　　　　　　　　　　　　　　　　　　　　(703) 748 2695 (fax )
　　　　　　　　　　　　　　　　　　　　　　　eisler@islerdare.com
　　　　　　　　　　　　　　　　　　　　　　　mticatch@islerdare,com
　　　　　　　　　　　　　　　　　　　　　　　jharding@islerdare.com

　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*
　　　　　　　　　　　　　　　　　　　　　　　*Enterprise RAC Company of Maryland, LLC*

11

**CERTIFICATE OF SERVICE**

I certify that on this 24th day of February 2026, I caused a true and correct copy of the foregoing to be sent by electronic mail to Plaintiff at kinghallmark@aol.com, and by United States mail to Plaintiff as follows:

Kenyon Devon Ames
2465 J17 Centerville Rd.
Herndon, VA 20170

*Pro Se Plaintiff*

/s/ *Edward Lee Isler*
Edward Lee Isler, Bar No. 22332
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
(703) 748-2690 (main)
(703) 748 2695 (fax)
eisler@islerdare.com

*Attorney for Defendant*
*Enterprise RAC Company of Maryland, LLC*